# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2025

Lyle W. Cayce
Clerk

No. 24-60608

Hiran Management, Incorporated, *doing business as* Hungry
Like the Wolf,

*Petitioner/Cross-Respondent*,

*versus*

National Labor Relations Board,

*Respondent/Cross-Petitioner*.

Petition for Review of an Order of the
National Labor Relations Board
Agency No. 16-CA-303914

Before Jones, Stewart, and Ramirez, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Ninety years after Congress created the National Labor Relations
Board ("NLRB"), the NLRB claimed for the first time the ability to award
full compensatory damages in its enforcement proceedings. Here, the NLRB
granted that remedy to eight employees in a proceeding against their former
employer, Hiran Management ("Hiran"). Hiran had discharged them after
they went on strike. We hold that the NLRB lacks statutory authority to

No. 24-60608

award full compensatory damages.[1] We GRANT the employer's petition in part; DENY NLRB's enforcement petition in part; and REMAND for further proceedings.

## BACKGROUND

Niroj Hiransomboon and his wife, acting through Petitioner Hiran Management, purchased Hungry Like the Wolf, a struggling karaoke restaurant in Houston, Texas, in July 2022. Hiran runs Hungry Like the Wolf as a small, non-union business that employs only about twenty workers. Hiran hired a manager, Paul Peters, to oversee its eight "front of house" employees, who served as hosts, bartenders, servers, and bussers. The eight employees were Jordan Logan, Dara Kiel, Knowshaidymar Cuevas, Ashton Cano, Melaina Alexander, Sarah Havemann, Natalie Reul, and Kenneth Thornton ("the Employees").

Soon after Hiran hired Peters, the Employees began to complain about Peters's management approach. For example, they complained that Peters assigned them extra duties without increased pay, such as checking inventory, collecting money from the safe, or opening and closing the restaurant. On occasion, Logan and Alexander would also help Peters make work schedules, although Peters corrected and finalized the schedules himself. Peters promised several employees that they would receive additional compensation for performing "shift supervisor" duties, but they did not consistently receive additional compensation.

To resolve the complaints, Peters scheduled a meeting with the Employees for September 18, 2022. Seven front of house staff attended the

---

[1] Because we conclude that the NLRB exceeded its statutory authority by awarding compensatory damages, it is unnecessary to reach the Petitioner's arguments that the damages award violated Article III of the U.S. Constitution, the Seventh Amendment, the major questions doctrine, and the due process clause.

meeting, along with the bar supervisor, Adriana Perswell. The meeting did not go well. After a heated exchange, the Employees walked out of the meeting. Later that evening, the Employees reconvened, decided to go on strike, and formulated a list of demands. On September 20, the next workday, most of the Employees did not return to work.[2] A few days later, Bruce Hiransomboon, the restaurant's lawyer, invited the Employees to meet on September 29 to discuss their demands. The meeting was unsuccessful. One week later, on October 6, Bruce Hiransomboon notified the striking employees that they were no longer employees of Hiran Management.

After Hiran terminated the strikers, counsel for the NLRB filed an administrative complaint, alleging that Hiran violated section 8(a)(1) of the National Labor Relations Act ("NLRA"). *See* 29 U.S.C. § 158(a)(1). Under section 8(a)(1), employers cannot interfere with an employee's right to engage in "concerted activities for the purpose of collective bargaining." 29 U.S.C. § 157. The NLRB argued that Hiran fired the Employees for engaging in concerted activity and to discourage such future conduct. The case was tried in November 2023 before an administrative law judge ("ALJ"), who ruled in favor of the NLRB. Hiran appealed to the Board. The Board adopted the ALJ's rulings and conclusions with some minor adjustments. The Board's order mandated that Hiran cease and desist from its unfair labor practices, reinstate the discharged Employees, and make the Employees whole "for any loss of earnings and other benefits, and for any other direct or foreseeable pecuniary harms suffered as a result" of the unfair labor practices. Following the Board's decision, Hiran filed a Petition for Review with this court and the NLRB filed a Cross-Application for Enforcement.

---

[2] Of the eight front of house employees, only Cuevas showed up. Cuevas worked for about an hour before joining the other employees on strike.

No. 24-60608

## STANDARDS OF REVIEW

This court reviews the NLRB's legal conclusions *de novo*. *Flex Frac Logistics, LLC v. NLRB*, 746 F.3d 205, 207 (5th Cir. 2014) (citing *Sara Lee Bakery Grp., Inc. v. NLRB*, 514 F.3d 422, 428 (5th Cir. 2008)). The NLRB's factual findings are "conclusive" if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). Substantial evidence is "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." *Flex Frac*, 746 F.3d at 207 (quoting *El Paso Elec. Co. v. NLRB*, 681 F.3d 651, 656 (5th Cir. 2012)). While a reviewing court may not "reweigh the evidence" or "substitute [its] judgment" for that of the NLRB, its review is not "merely a 'rubber stamp.'" *Creative Vision Res., L.L.C. v. NLRB*, 882 F.3d 510, 515 (5th Cir. 2018) (first quoting *El Paso*, 681 F.3d at 656; then quoting *NLRB v. Arkema, Inc.*, 710 F.3d 308, 314 (5th Cir. 2013)).

## DISCUSSION

On appeal, Hiran does not dispute that it unlawfully discharged the Employees based on their "concerted activities for ... mutual aid or protection." 29 U.S.C. §§ 157, 158(a)(1). Instead, Hiran asserts first that the NLRA does not apply to four of the discharged employees because they are "supervisors," rather than "employees." Second, it contends that the NLRB lacked statutory authorization to order damages for all "direct and foreseeable" harms stemming from the Employees' discharge. Third, Hiran contends that the NLRB's determination violates the Constitution's Article III, the Seventh Amendment, and the Due Process clause, as well as the major questions and nondelegation doctrines.

Although it is necessary to address the supervisor issue, the most important issue raised by Hiran, with which we agree, is that the NLRB

lacked statutory authority to order direct or foreseeable compensatory damages.

I

The NLRA confers certain rights on employees. *See, e.g.*, 29 U.S.C. § 157. But supervisors, a class the statute distinguishes from employees, do not benefit from the protections of the Act. *Fla. Power & Light Co. v. Int'l Bhd. of Elec. Workers, Loc. 641*, 417 U.S. 790, 807, 94 S. Ct. 2737, 2746 (1974). As defined by the Act, "supervisor" means

> any individual having authority, in the interest of the employer,
> to hire, transfer, suspend, lay off, recall, promote, discharge,
> assign, reward, or discipline other employees, or responsibly to
> direct them, or to adjust their grievances, or effectively to
> recommend such action, if in connection with the foregoing the
> exercise of such authority is not of a merely routine or clerical
> nature, but requires the use of independent judgment.

29 U.S.C. § 152(11); *see also NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 713, 121 S. Ct. 1861, 1867 (2001) (an individual qualifies as a supervisor who "engage[s] in any 1 of the 12 listed supervisory functions," uses independent judgment, and holds authority "in the interest of the employer"). Whether to treat an employee as a supervisor is a question of fact. *Int'l Bhd. of Elec. Workers v. NLRB*, 973 F.3d 451, 457 (5th Cir. 2020) (citing *Entergy Gulf States v. NLRB*, 253 F.3d 203, 208 (5th Cir. 2001)).

Not only is supervisory status a question of fact, but the Board treats supervisory status as an affirmative defense that must be raised in the employer's answer to an unfair labor practice complaint. When failure to timely raise an affirmative defense "deprive[s] the Board of a full and fair opportunity to litigate the issue before the ALJ," the defense is waived. *Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515, 520 (5th Cir. 2007).

No. 24-60608

Hiran did not draw attention to the individuals' alleged supervisory status until after the administrative hearing. Instead, Hiran first discussed the issue in its post-hearing brief to the ALJ. Because Hiran did not timely argue the supervisory status defense, the Board concluded that the argument was waived. That result aligns with this court's decision in *Strand*. 493 F.3d at 520 (finding that a party waived its supervisory status affirmative defense "by failing to raise it before filing its post-hearing brief to the ALJ"). As in *Strand*, Hiran's failure to raise this defense at the administrative hearing prevented the Board's General Counsel from developing an adequate evidentiary record in opposition. Hiran waived its affirmative defense by untimeliness.[3]

Even apart from waiver, Hiran's assertions on the merits are unpersuasive. As the party asserting the defense, Hiran bore the burden of showing substantial evidence of supervisory status. *Ky. River Cmty. Care*, 532 U.S. 706 at 711, 121 S. Ct. at 1866. The company contends that four of the fired individuals—Alexander, Cuevas, Logan, and Kiel—were supervisors. While the four employees sometimes worked as shift supervisors, "job titles reveal very little, if anything," about whether an employee is a supervisor. *NLRB v. ADCO Elec. Inc.*, 6 F.3d 1110, 1117 (5th Cir. 1993). Logan and Cuevas sometimes opened or closed the restaurant, but Hiran does not demonstrate that doing so required the exercise of independent judgment. Further, although Alexander, Logan, and Kiel

---

[3] Hiran contends that the Board had a full and fair opportunity to litigate the supervisory status of Kiel, Logan, Cuevas, and Alexander because the Board asked them questions during the hearing about their job duties. Without notice that Hiran was raising a supervisory status defense, however, the NLRB attorney was unable to cross-examine or provide counterevidence on the issue. And that means that the Board did not have "a full and fair opportunity to litigate the issue." *Strand*, 493 F.3d at 520; *see also Trident Seafoods, Inc. v. NLRB*, 101 F.3d 111, 117 (D.C. Cir. 1996) (finding waiver appropriate even though the record contained some evidence on the issue).

No. 24-60608

sometimes assisted Peters with scheduling, Peters appears to have corrected and finalized the schedules himself. Hiran has not shown that the employees exercised independent judgment when assisting Peters with scheduling. For this additional reason, all eight of Hiran's fired employees are covered by the NLRA.

## II

Hiran's critique of the Board's decision is far more potent concerning the types of remedies that the Board may order. Section 10(c) of the NLRA authorizes the Board to issue orders requiring an employer "to cease and desist from [an] unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter." 29 U.S.C. § 160(c). Hiran contends that this provision limits the Board to awarding only equitable remedies, not legal damages.

A circuit split has developed following the Board's announcement in 2022 that it would begin to order damages for "all foreseeable harms" resulting from unfair labor practices. *See Thryv, Inc.*, 372 NLRB No. 22 (2022), *overruled on different grounds by Thryv, Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024). *Compare NLRB v. Starbucks Corp.*, 125 F.4th 78, 97 (3d Cir. 2024) (disapproving the Board's expansion of remedies), *with Int'l Union of Operating Eng'rs, Loc. 39 v. NLRB*, 127 F.4th 58, 86 (9th Cir. 2025) (upholding the *Thryv* remedial scheme). In the wake of the Board's aggressive implementation of *Thryv*, litigation is pending across the circuit courts about the statutory authority for such damages. We side with the Third Circuit.

The distinction between legal and equitable remedies stems from the ancient tradition of "the divided bench," which separated courts of equity and courts of law. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.

No. 24-60608

204, 212, 122 S. Ct. 708, 714 (2002). Courts of equity could only provide parties equitable relief, including remedies such as injunctions and restitution. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S. Ct. 2063, 2068 (1993) (explaining that injunctions and restitution are "traditionally viewed as 'equitable.'"); *Ex parte Lennon*, 166 U.S. 548, 556, 17 S. Ct. 658, 661 (1897) (indicating that courts of equity could "restrain[] . . . contemplated or threatened action" and "require affirmative action"); *see also Starbucks*, 125 F.4th at 95; *3484, Inc. v. NLRB*, 137 F.4th 1093, 1122 (10th Cir. 2025) (Eid, J., concurring in part and dissenting in part); *Loc. 39*, 127 F.4th at 93 (Bumatay, J., dissenting). Compensatory damages, in contrast, were a typical legal remedy, which only courts of law could award. *See Mertens*, 508 U.S. at 255, 113 S. Ct. at 2068 (describing compensatory damages, which compensate for losses "sustained as a result of [an] alleged breach of . . . duties," as "the classic form of *legal* relief") (emphasis in original).

The NLRA limits the NLRB to ordering certain equitable remedies. That the Board may order an employer to "cease and desist" or "take affirmative action" amounts to permission to grant equitable remedies. *See Starbucks*, 125 F.4th at 95; Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 533 (2016) (asserting that equitable remedies "compel action or inaction"). Reinstatement and backpay, the two types of affirmative action expressly mentioned in the statute, are forms of equitable relief. *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900–01, 104 S. Ct. 2803, 2813 (1984) (discussing NLRB's ability to order an "equitable backpay award"); *Curtis v. Loether*, 415 U.S. 189, 197, 94 S. Ct. 1005, 1010 (1974) (explaining that courts have characterized "back pay as an integral part of an equitable remedy, a form of restitution"); *NLRB v. Big Three Welding Equip. Co.*, 359 F.2d 77, 78, 84 (5th Cir. 1966) (enforcing "restitution of back pay"); *Agwilines, Inc. v. NLRB*, 87 F.2d 146, 151 (5th Cir. 1936) (describing NLRB

No. 24-60608

proceedings as "equitable in their nature," whereby the NLRB exerts power "similar to that exerted by a chancellor in issuing mandatory orders to restore status"). Moreover, the Supreme Court has explained that the NLRB's "power to order affirmative relief" does not include a "general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct."[4] *UAW-CIO v. Russell*, 356 U.S. 634, 642–43, 78 S. Ct. 932, 937 (1958). According to this uniform authority, the NLRA permits the NLRB to award only equitable, not legal, relief.

A comparison with the remedial provision in section 706(g) of Title VII, which governs employment discrimination, further reinforces that NLRA section 10(c) authorizes only equitable remedies. Title VII's remedial provision "was expressly modeled" on NLRA section 10(c). *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419, 95 S. Ct. 2362, 2372 (1975). The Supreme Court has consulted section 10(c) for "guidance as to the proper meaning of the same language" in Title VII. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 849, 121 S. Ct. 1946, 1950 (2001). Upon its enactment, section 706(g) "closely tracked" NLRA section 10(c) in permitting courts to "enjoin the respondent from engaging in [an] unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without

--------

[4] The NLRB attempts to distinguish *Russell*, arguing that the Supreme Court only forbade awards of "full" compensatory damages, while leaving open the possibility of partial compensatory damages that further the purpose of the NLRA. Regarding backpay, the Board is correct that *Russell* does not preclude ordering all forms of monetary relief. But backpay, as an equitable remedy, is limited to "restor[ing] to the employees in some measure what was taken from them because of the Company's unfair labor practices." *Russell*, 356 U.S. at 643, 78 S. Ct. at 938 (quoting *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543, 63 S. Ct. 1214, 1220 (1943)). That differs starkly from the remedy provided here, which seeks to restore to the Employees not only the wages or benefits their employer denied them, but also all foreseeable harms they suffered. Nothing in *Russell* suggests that the Board may award monetary relief covering all foreseeable harms.

back pay." *Id.* at 848, 121 S. Ct. at 1949 (quoting 42 U.S.C. § 2000e-5(g)(1)). But "[i]n 1972, Congress *expanded* § 706(g) to specify that a court could, in addition to awarding those remedies previously listed in the provision, award 'any other equitable relief as the court deems appropriate.'"[5] *Id.* at 849–50, 121 S. Ct. at 1950 (emphasis added). Two decades later, Congress further expanded section 706(g) to "include compensatory and punitive damages." *Id.* at 851, 121 S. Ct. at 1951. If section 706(g) had already permitted compensatory damages, Congress's amendment to authorize compensatory damages would have been superfluous. In contrast to its expansion of section 706(g), Congress has not seen fit to expand the remedies available under section 10(c) of the NLRA. If compensatory damages were possible under section 706(g) only with an amendment, they must remain unavailable under section 10(c) until Congress amends the NLRA.

Undeterred, the NLRB suggests that it has "frequently" ordered monetary relief for a range of harms resulting from unfair labor practices. Its adverb seems exaggerated, but the Board points to a handful of cases in which NLRB awarded monetary relief beyond lost wages. See *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540, 63 S. Ct. 1214, 1218 (1943) (refunding mandatory union dues that were deducted from workers' wages); *NLRB v. Louton, Inc.*, 822 F.2d 412, 413–14 (3d Cir. 1987) (including health insurance benefits and medical expenses as part of back pay award); *Lou's Transp., Inc. v. NLRB*,

---

[5] The NLRB attempts to characterize this amendment to section 706(g) as a limitation on, rather than an expansion of, the section's scope. Because section 10(c) of the NLRA contains no such limitation, the argument goes, the NLRB is not restricted to granting only equitable relief. Both the Supreme Court's language in *Pollard* and common sense contradict this conclusion. As quoted above, the Supreme Court unambiguously viewed the addition of the "any other equitable relief" language as an expansion that authorized remedies not previously available. And it defies common sense to suggest that the addition of a broad, catchall remedy somehow reduced the number of available remedies.

No. 24-60608

945 F.3d 1012, 1026 (6th Cir. 2019) (including lost retirement benefits as part of back pay award). As the Third Circuit observed, though, these cases involved providing "workers with the benefits of their employment contracts in a way that likely fell under the umbrella of a backpay award." *Starbucks*, 125 F.4th at 96; *see also 3484*, 137 F.4th at 1124 (Eid, J., concurring in part and dissenting in part) ("Because those awards encompass discrete losses related to an employee's lost wages or benefits that were unlawfully withheld, they are 'closely tied to the equitable remedy of backpay' and are therefore distinct from ordinary compensatory damages." (citation omitted)).[6] Thus, far from establishing a broad remedial power to grant monetary relief, these cases confirm that the NLRB is limited to providing equitable remedies that resemble backpay.

Adhering to *Thryv* in this case, the NLRB awarded the eight discharged employees full compensatory damages. For the first ninety years of the NLRB's existence, it did not claim the power to order damages for all foreseeable harms resulting from an unfair labor practice. In *Thryv*, the Board broke new ground, as it decided that "in all cases in which [its] standard remedy would include an order for make-whole relief, the Board will expressly order that the respondent compensate affected employees for all direct or foreseeable pecuniary harms suffered as a result of the respondent's unfair labor practice." 372 NLRB No. 22, at 13. The Board went on to explain that "foreseeable pecuniary harms" could include "interest and late

---

[6] The remedies in the other cases the Board cites are equally unremarkable. *See, e.g.*, *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 747, 103 S. Ct. 2161, 2172 (1983) (holding that the Board may award attorneys' fees if an employer brings a frivolous, retaliatory lawsuit against its workers); *NLRB v. Laborers' Int'l Union*, 748 F.2d 1001, 1005–06 (5th Cir. 1984) (permitting the Board to award medical costs covered by a health plan an employee would have had but for an unfair labor practice). Both remedies reimburse an employee only for direct harms caused by unfair labor practices, which is distinct from awarding damages for every foreseeable expense incurred by the employees.

fees on credit cards," penalties for "early withdrawals" from retirement accounts, "loan or mortgage payments," "transportation or childcare costs," "credit card debt," and "other costs simply to make ends meet." *Id.* at 9. After *Thryv*, the Board's General Counsel added that unreimbursed tuition payments, job search costs, day care costs, specialty tool costs, utility disconnection or reconnection fees, relocation or moving costs, legal representation costs in eviction proceedings, and expenses from immigration status changes might also be "foreseeable pecuniary harms." *See* Office of the General Counsel Memorandum GC 24-04, Securing Full Remedies for All Victims of Unlawful Conduct (Apr. 8, 2024); *see also Int'l Union of Operating Eng'rs*, 127 F.4th at 90–91 (Bumatay, J., dissenting). After *Thryv*, "the only limit is the Board's imagination." *Int'l Union of Operating Eng'rs*, 127 F.4th at 91 (Bumatay, J., dissenting).

The articulation of "foreseeable pecuniary harms" in *Thryv* is a form of legal damages. Legal damages may be compensatory or consequential. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003) (explaining that compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct" (citation omitted)); *see also* RESTATEMENT (SECOND) OF TORTS § 903, cmt. a (Am. L. Inst. 2024) (asserting that compensatory damages aim "to place [a plaintiff] in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed"); *Damages*, BLACK'S LAW DICTIONARY (12th ed. 2024) (describing consequential damages as those for which losses "do not flow directly and immediately from an injurious act but . . . result indirectly from the act."). Damages for many of the harms listed in *Thryv* are classic examples of consequential damages. *See* RESTATEMENT (THIRD) OF TORTS § 4, cmt. B (Am. L. Inst., Tentative Draft No. 1, 2022) (explaining that "medical expenses" and "rental-car expenses" are forms of consequential

damages); 2 Suart M. Speiser et al., AMERICAN LAW OF TORTS § 8:8 (2025) (classifying "transportation and travel" expenses and costs of "domestic help (housekeeper, maid, child care personnel)" as compensatory damages). The Board's previous chairman, Lauren McFerran, admitted that consequential damages include "late fees on credit cards, or penalties if [an employee] must make early withdrawals from her retirement account in order to cover her living expenses." *Voorhees Care & Rehab. Ctr.*, 371 NLRB No. 22, 2021 WL 3812220, at *4 n.14 (Aug. 25, 2021). Because the Board's remedy aims to redress concrete losses to the Employees wholly apart from backpay and pay-related costs, it covers harms typically dealt with in tort suits for compensatory damages, and it operates as a compensatory damages order.

The Board attempts to characterize the *Thryv* remedy as equitable, contending that make-whole relief is equitable because it is designed to restore the status quo. But that feature alone does not render the ordered relief equitable. While some forms of equitable relief attempt to restore the status quo, legal relief often has the same goal. If the Board were correct, then all instances of compensatory damages could qualify as an equitable remedy. In demonstrating no principled distinction between legal and equitable relief, the Board's result diverges sharply from the well-established principle that compensatory damages are a form of legal relief. *See Mertens*, 508 U.S. at 255, 113 S. Ct. at 2068. The Board is not entitled to re-create established distinctions in the law, or in its governing statute, to serve parochial purposes.

We agree with the Third Circuit's analysis, which concluded that the *Thryv* remedy goes beyond the text of the NLRA.[7] *Starbucks*, 125 F.4th at 97.

---

[7] On the other hand, in *Local 39*, the Ninth Circuit upheld the *Thryv* remedy over a dissent by Judge Bumatay. 127 F.4th at 87. The majority reasoned that the foreseeable

No. 24-60608

Judge Eid reached the same conclusion.[8]  *See 3484*, 137 F.4th at 1125 (Eid, J., concurring in part and dissenting in part) ("[T]he Board has no power to award compensatory or consequential damages."). Accordingly, we hold that the remedy the NLRB articulated in *Thryv* represents legal, not equitable, damages, and the NLRA affords a complainant only equitable damages. *Thryv* thus exceeds the NLRB's authority under the NLRA.

## CONCLUSION

For these reasons, the NLRB violated the NLRA by its order that Hiran reimburse all foreseeable costs incurred by the discharged employees. Hiran's petition is GRANTED in part; NLRB's cross-petition for enforcement is DENIED in part; and the case is REMANDED for further proceedings consistent with this opinion.

---

harm provision "furthers the policy of the NLRA" because it "aim[s] at restor[ing] the economic strength that is necessary to ensure a return to the status quo ante." *Id.* at 81 (citation and internal quotation marks omitted). The Ninth Circuit is correct that the purpose of the Act is to make "workers whole for losses suffered on account of an unfair labor practice." *Id.* at 86 (quoting *NLRB v. Strong*, 393 U.S. 357, 359, 89 S. Ct. 541, 543 (1969)). But the Ninth Circuit glosses over the fact that the NLRB can only effectuate the purpose of the NLRA using authorized remedies. *See Russell*, 356 U.S. at 642–43, 78 S. Ct. at 937; *see also Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 235–36, 59 S. Ct. 206, 219 (1938) ("We think that this authority to order affirmative action does not go so far as to . . . enable[e] the Board to inflict . . . any penalty . . . even though the Board [may] be of the opinion that the policies of the Act might be effectuated."). The range of permitted remedies excludes full compensatory damages.

[8] The majority in *3484* found that the petitioners had forfeited their argument about the scope of authority, so it did not reach the question of whether the *Thryv* remedy is consistent with the NLRA. *3484*, 137 F.4th at 1114.